JOSEPH S. LEVENTHAL (SBN 221043)
Joseph.Leventhal@dinsmore.com
ANDREW K. PULS (SBN 273672)
Andrew.Puls@dinsmore.com
DINSMORE & SHOHL LLP
655 West Broadway, Suite 800
San Diego, CA 92101
Ph: (619) 400-0500
Fx: (619) 400-0501

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GEORGE E. SCHWINDT, an individual, <br><br> Plaintiff, <br><br> v. <br><br> FLOGGING MOLLY, INC., an Ohio corporation; MOLLYWOOD, INC., a Nevada corporation; BORSTAL BEAT RECORDS, LLC, a Delaware limited liability company; SALTY DOG MUSIC, LLC, a Delaware limited liability company; THE QUIET MAN, LLC, a Delaware limited liability company; BEGGARS BUSH, INC., a Delaware corporation; SALTY DOG CRUISE, LLC, business entity, form unknown; DAVID R. KING, an individual; BRIDGET A. REGAN, an individual; DENNIS J. CASEY, an individual; MATTHEW A. HENSLEY, an individual; NATHEN A. MAXWELL, an individual; and ROBERT A. SCHMIDT, JR., an individual, <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR:** <br><br>   **(1) FEDERAL COPYRIGHT INFRINGEMENT;** <br><br>   **(2) BREACH OF FIDUCIARY DUTY TO MINORITY SHAREHOLDER;** <br><br>   **(3) ACCOUNTING;** <br><br>   **(4) FRAUD;** <br><br>   **(5) DEFAMATION;** <br><br>   **(6) COMMON LAW MISAPPROPRIATION; AND** <br><br>   **(7) VIOLATION OF CAL. BUS. & PROF. CODE § 17200, ET. SEQ.** <br><br> **JURY TRIAL DEMANDED** |

DINSMORE &
SHOHL LLP
SAN DIEGO

1

**COMPLAINT**

Plaintiff GEORGE E. SCHWINDT ("Schwindt"), by his attorneys, alleges, with personal knowledge as to his own actions, and upon information and belief as to those of others, as follows:

## NATURE OF ACTION

1.      Schwindt files this action against Defendants for, among other things, willful copyright infringement under federal law, pursuant to 17 U.S.C. § 101, *et seq.* and 28 U.S.C. §§ 1331, 1338(a), and 1367.

2.      Schwindt is a professional musician and a founding member of the seven-person Celtic rock band Flogging Molly (the "Band").  During his 20 years as the Band's drummer, it grew from a small, part-time, Los Angeles bar-band into a band of worldwide prominence with multi-million dollar annual revenues. During that same time, Schwindt – without any additional compensation – handled most of the Band's business and legal matters and acted as the primary corporate officer for the Band's entire enterprise.  Schwindt also designed and is the only Band member who owns the copyright to the Band's now iconic "Phoenix Clover Snakes" logo.

3.      In October 2015, however, the other six members of the Band blindsided Schwindt and told him that his services as the Band's drummer would no longer be needed.  Not only was Schwindt fired as the drummer of the Band that he loved – without being specifically told why – but he also stopped receiving the income and distributions that belong to him as a 1/7 owner in the Band's corporate entities, despite the other members' acknowledgement that Schwindt was still an equity owner of the Band's enterprises, and their continued prominent use of Schwindt's copyrighted logo.

4.      After Schwindt was no longer the Band's drummer, the other six members of the Flogging Molly enterprise created separate companies and diverted funds and corporate opportunities to those new companies with the

2

DINSMORE &
SHOHL LLP
SAN DIEGO

specific intent of hiding monies that rightfully belong to Schwindt. Adding insult to injury, at least one member of the Band publicly defamed Schwindt. Through this Complaint, Schwindt seeks monetary damages, permanent injunctive relief, and access to the Flogging Molly business enterprises to which he is legally entitled.

## THE PARTIES

5.   Schwindt is an individual who, at all relevant times, was a resident of the State of California, County of Los Angeles.

6.   Defendant FLOGGING MOLLY, INC. ("FMI") is a corporation organized under the laws of Ohio, with a principal place of business in Los Angeles, California.

7.   Defendant MOLLYWOOD, INC. ("Mollywood") is a corporation organized under the laws of Nevada, with a principal place of business in Los Angeles, California.

8.   Defendant BORSTAL BEAT RECORDS, LLC ("Borstal Beat") is a limited liability company organized under the laws of Delaware, with a principal place of business in Los Angeles, California.

9.   Defendant SALTY DOG MUSIC, LLC ("SD Music") is a limited liability company organized under the laws of Delaware, with a principal place of business in Los Angeles, California.

10.   FMI, Mollywood, Borstal Beat, and SD Music may be referred to collectively herein as the "Original FM Entities."

11.   Defendant THE QUIET MAN, LLC ("Quiet Man") is a limited liability company organized under the laws of Delaware, with a principal place of business in Los Angeles, California.

12.   Defendant BEGGARS BUSH, INC. ("Beggars Bush") is a corporation organized under the laws of Delaware, with a principal place of business in Los

3

**COMPLAINT**

Angeles, California.

13.    Defendant SALTY DOG CRUISE, LLC ("SD Cruise") is a business organization, form unknown, with a principal place of business in Los Angeles, California.

14.    Quiet Man, Beggars Bush, and SD Cruise may be referred to collectively herein as the "New FM Entities."  The Original FM Entities and the New FM Entities may be referred to collectively herein as the "Flogging Molly Entities."

15.    Defendant DAVID R. KING ("King") is an individual who, at all relevant times, was a citizen of the state of Michigan, residing in Detroit, and who does business in Los Angeles.

16.    Defendant BRIDGET A. REGAN ("Regan") is an individual who, at all relevant times, was a citizen of the state of Michigan, residing in Detroit, and who does business in Los Angeles.

17.    Defendant DENNIS J. CASEY ("Casey") is an individual who, at all relevant times, was a citizen of the state of New York, residing in Greenlawn, and who does business in Los Angeles.

18.    Defendant MATTHEW A. HENSLEY ("Hensley") is an individual who, at all relevant times, was a citizen of the State of California, residing in Carlsbad, and who does business in Los Angeles.

19.    Defendant NATHEN A. MAXWELL ("Maxwell") is an individual who, at all relevant times, was a citizen of the state of Colorado, residing in Denver, and who does business in Los Angeles.

20.    Defendant ROBERT A. SCHMIDT, JR. ("Schmidt") is an individual who, at all relevant times, was a citizen of the state of Colorado, residing in Boulder, and who does business in Los Angeles.

21.    King, Regan, Casey, Hensley, Maxwell, and Schmidt may be referred

4

**COMPLAINT**

1    to collectively herein as the "Other Members."   All references to "Defendants"

2    herein include both the Other Members and the Flogging Molly Entities.

3        22.   Schwindt is further informed and believes and on that basis alleges that

4    there exists, and at all times herein mentioned there existed, a unity of interest and

5    ownership between the Other Members and the Flogging Molly Entities, such that

6    any individuality and separateness between the Other Members and Flogging Molly

7    Entities has ceased, and that certain of the Flogging Molly Entities are also the alter

8    egos of each other.   Adherence to the fiction of the separate existence of the

9    defendant entities as distinct from each other would permit an abuse of the corporate

10   privilege and would sanction fraud and promote injustice.

11   **JURISDICTION AND VENUE**

12       23.   This is a civil action seeking damages and injunctive relief for

13   copyright infringement under the United States Copyright Act.   This Court has

14   jurisdiction under 17 U.S.C. § 101, *et seq.*; 28 U.S.C. § 1331 (federal question

15   jurisdiction), and 28 U.S.C. § 1338(a) (jurisdiction over copyright actions).   The

16   Court has supplemental jurisdiction over Schwindt's state law claims under 28

17   U.S.C. § 1367.

18       24.   Defendants are subject to the personal jurisdiction of this Court because

19   they do business in and/or reside in Los Angeles, California.

20       25.   Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c)

21   because a substantial part of the events giving rise to the claims in this action

22   occurred within this district.

23   **FACTS**

24   ***Flogging Molly: The Early Years***

25       26.   When Flogging Molly was founded in the mid-1990s, it was a fledgling

26   band playing shows at Molly Malone's bar in Los Angeles every week.   There were

27   no corporate entities, the Band did not have a record deal, and it did not tour.

28

**COMPLAINT**

DINSMORE &
SHOHL LLP
SAN DIEGO

27.     As the Band slowly gained notoriety, it was Schwindt, the drummer, who – in addition to his duties as drummer – performed the tedious tasks necessary to catalyze the Band's growth.  For example, Schwindt (and often his wife) took the significant laboring oar by:

- Drafting and sending press packages to radio stations and promoters across the country;

- Obtaining physical mail and email addresses for the Band's mailing list, which Schwindt established, expanded, and maintained for a decade until it grew to more than 100,000 listees;

- Labeling and stamping postcards by hand to notify the Band's fans about upcoming shows;

- Fulfilling fan orders by packaging the Band's CDs and delivering them to the post office;

- Designing the Band's merchandise, storing merchandise in his garage, and handling all fulfillment;

- Recruiting his brother, Gary, as both a trumpeter for, and initial manager of, the Band;

- Mapping out the Band's plans on index cards, and taping them to the walls of Schwindt's apartment;

- Creating the Band's first bank account, depositing its checks, balancing the books, and maintaining adequate reserves and cash flow, including loaning Schwindt's personal money to the Band's enterprise; and

- Selling his personal vehicle to help the Band purchase a van and trailer to begin touring.

28.     In sum, Schwindt did more off-the-stage work for the Band than any of the Other Members, and he wore many different hats.

29.     Without Schwindt, the Band would not have lasted more than two

6

**COMPLAINT**

years.  After recording the "Alive Behind the Green Door" album in May 1996, the Band broke up.  Unwilling to fail, however, Schwindt convinced the Band's lead singer, Defendant King, that he should give the Band another shot, rather than return to Ireland.  After and in connection with that conversation, Schwindt found capable management for the Band, established a rehearsal schedule, and helped identify a new guitarist, which set the stage for the Band's eventual success.

30.  Over time, and in large part fueled by Schwindt's tireless efforts, the Band grew from a side-project paying its members about $40 per week into a highly-successful business enterprise with a record deal that allowed Schwindt and the Other Members to quit their jobs and tour.

31.  Even on tour, Schwindt's unsurpassed dedication to the Band continued.  For example, Schwindt did the vast majority of the driving.  He often drove the Band's van throughout the night after playing a show at which he had unloaded the Band's gear, played the drums for an hour-and-a-half, and then re-loaded the Band's gear.  And, it was Schwindt who, more often than not, sold merchandise before and after live shows and was responsible for tour money and inventory.

32.  Schwindt's unparalleled and consistent sweat equity over 20 years is one of the single biggest contributors to the goodwill that the Band still enjoys today.  Moreover, the Band's growth was in large part due to Schwindt's ability to identify the synergy of the Band's music with an underdeveloped Irish marketplace and build the Band's brand internationally.

### *The "Phoenix Clover Snakes" Logo*

33.  In 1998, after purchasing heraldry and design books, and performing independent research, Schwindt designed the Band's now iconic and internationally recognized "Phoenix Clover Snakes" logo ("Logo").  Schwindt created the initial sketches of the Logo, and then had an artist, Brian Peterson, clean it up and

7

**COMPLAINT**

formalize it:



34.     Schwindt granted the Band a nonexclusive implied license to use the Logo so long as he was in the Band and/or was receiving the full benefits of his 1/7 share of the Band's enterprise.

35.     Schwindt's Logo is a registered copyright with the United States Copyright Office, copyright registration number VA0001998237.  Schwindt is a 50 percent owner of the copyright to the Logo.  Artist Brian Peterson is the other 50 percent owner of the copyright to the Logo.  None of the Other Members own the copyright to the Logo.

### Flogging Molly: Mainstream Success

36.     The Band released an independent live album in 1997.  But their first taste of mainstream success came with the release of the studio album "Swagger" in 2000, which reached #128 on the Billboard 200.

37.     The Band also released studio albums in 2002, 2004, 2008, and 2011, which peaked on the Billboard 200 at #104, #20, #4, and #9, respectively.

38.     In 2002, the Band released its defining album, "Drunken Lullabies," which was certified Gold (indicating sales of more than 500,000 units).

39.     The Band enjoyed international success too.  Their 2004, 2008, and 2011 studio albums each cracked the top 100 charts in multiple European countries.

40.     In addition to their studio albums, the Band released live albums in 2006 and 2010, which peaked at #67 and #40 in the Billboard top 200 rankings,

8

**COMPLAINT**

respectively.

41.     The Band's 2006 documentary film, "Whiskey On A Sunday," with accompanying live album, was certified Platinum (indicating sales of more than 100,000 units).

42.     The Band is particularly well-known for its live performances and has played nearly every major music festival in the United States, as well as Europe and Japan.  Its national "Green 17 Tour" – a countdown to St. Patrick's Day – was an unequivocal monetary success for a decade.  Importantly, before Schwindt was fired from the Band as its drummer, he urged the Other Members and management to increase the Band's touring schedule.

43.     Over the past two decades, the Band sold over three million records worldwide and generated tens of millions of dollars from all revenue sources – including, without limitation, from touring, merchandise sales, publishing income, and record royalties.

44.     Without question, Schwindt was essential to the Band's success.  As Defendant King explained in the Band's documentary film, "Whiskey On A Sunday":

> George is like the one that puts it together or put it together in the sense of getting his brother Gary involved to manage us and you know, and setting up a record company and setting up a publishing company and doing all the things that I certainly could not do, you know, or nobody else in the band could do, you know what I mean? Um, so he [George] brought all that in as well as playing drums you know, and eh, we certainly... all our dreams and all our ambitions would not be uh ever fulfilled I don't think without somebody like George in the band, you know?

### The Flogging Molly Enterprise

45.     As the Band became increasingly popular and financially successful, it became necessary to create a corporate structure to meet the needs of the Band's booming business enterprise.  Not only did Schwindt orchestrate the creation of that

9

**COMPLAINT**

structure, but he also handled most of the Band's business and legal matters.  During his 20-year tenure with the Band, Schwindt acted as primary corporate officer for the entire enterprise.  Indeed, it was Schwindt who worked with legal counsel and the Band's managers, and who oversaw touring logistics.  Schwindt performed all of these duties without any additional compensation.

46.     Schwindt formed the Band's first corporate entity, FMI, in late 1999.  FMI was and still is the Band's primary business entity, and is engaged in the business of music songwriting, producing, and licensing.  Schwindt was FMI's incorporator, and was, and still is, FMI's Treasurer and Vice President.  Schwindt, as a 1/7 (14.29%) owner of FMI, is a minority shareholder.  The Other Members own the remaining 6/7 (85.71%) of FMI, and are collectively its majority shareholder.

47.     FMI also owns various intellectual property, and Schwindt was instrumental in obtaining those rights.  For example, Schwindt, on behalf of FMI and with the assistance of counsel, registered the "Flogging Molly" trademark in all relevant classes in the United States and European Union, and this trademark has since accrued significant value and goodwill, both in the United States and internationally.

48.     The Band also formed an entity to meet the corporate needs of the touring and merchandising component of their business.  Their current touring entity, Mollywood, was formed in 2006 to replace the Band's prior touring entity, Swagger, Inc.  Schwindt is the President of and owns 1/7 (14.29%) of Mollywood, but is a minority shareholder.  The Other Members own the remaining 6/7 (85.71%) of Mollywood, and are collectively its majority shareholder.

49.     The Band has its own record label, Borstal Beat, which was formed in approximately January 2011.  Schwindt is the Vice President of, and 1/7 (14.29%) owner of, Borstal Beat, but is a minority shareholder.  The Other Members own the remaining 6/7 (85.71%) of Borstal Beat, and are collectively its majority

10

**COMPLAINT**

shareholder.

50.    In March 2015, the Band formed SD Music.  Schwindt is a 1/7 (14.29%) owner of SD Music, but is a minority shareholder.  The Other Members own the remaining 6/7 (85.71%) of SD Music, and are collectively its majority shareholder.

### *The Other Members Fire Schwindt as the Band's Drummer*

51.    Despite Schwindt's 20 years of tireless dedication to the Band, on or about October 5, 2015, the Other Members blindsided Schwindt and fired him as the Band's drummer.  At that meeting, Defendant Casey acknowledged that Schwindt would continue to receive his compensation as a member of the Flogging Molly Entities.

52.    To this day, Schwindt is bewildered by the Other Members' decision.  Schwindt never missed any Band-related meetings, never had any performance-related issues, and never had any substance abuse issues.  To the contrary, he was the model Band member.

53.    During the first three months he was out of the Band, Schwindt continued to receive the income and distributions that he was and still is entitled to as an equity holder in the Band's business enterprise, but otherwise he has received minimal communications from the Other Members.

54.    Since that initial three-month period, distributions to Schwindt have ceased, even though he is a shareholder, member, and/or equity owner of the Flogging Molly Entities and, generally speaking is, the 1/7 owner of the enterprise as a whole.  For example:

- Schwindt is a 1/7 (14.29%) owner of the "Borstal Beat" trademark, as registered in the United States and European Union;

- Schwindt is a 1/7 (14.29%) owner of the artwork in and to the Borstal Beat original logo;

11

**COMPLAINT**

- Schwindt owns at least 1/7 (14.29%) of *all* trademarks, service marks, and logos associated with the Band's enterprise, except for the Logo, which Schwindt owns 50% of;

- Schwindt owns 8.2 to 15% of the songwriting and publishing splits in 63 of the Band's compositions;

- Schwindt is a 1/7 (14.29%) owner of the copyrights for 63 compositions;

- Schwindt is a 1/7 (14.29%) owner of the copyright for the sound recording "Speed of Darkness" and any additional recording or out-takes made during those recording sessions;

- Schwindt is entitled to 1/7 (14.29%) of all royalty income derived from the Band's recordings during the 20 years he was in the Band;

- Schwindt is entitled to 1/7 (14.29%) of the Band's income from both touring and merchandise;

- Schwindt is a 1/7 (14.29%) copyright owner of two songs – "The Guns of Jericho" and "The Hand of John L. Sullivan" – which were released after his departure from the Band, but were introduced, written, arranged, and recorded during the time that Schwindt was in the Band;

- Schwindt is a 1/7 (14.29%) owner of the Band's various websites, URLs, and domain names; and

- Schwindt is a 1/7 (14.29%) owner of the Band's significant social media presence, which includes more than 1.25 million "likes" on Facebook; over 62,000 followers on Twitter; nearly 28,000 followers in Instagram; and more than 6,700 subscribers on YouTube.

55.     The Other Members firing Schwindt as the Band's drummer and refusing to provide Schwindt with his 1/7 share of benefits from the Band's enterprise constitutes a material breach of the implied license to use the Logo and

**COMPLAINT**

Dinsmore & Shohl LLP
San Diego

terminated that implied license.  Through subsequent communications, Schwindt or his agents also made clear that the Band's implied license to use the Logo had been rescinded.

56.     Despite termination and rescission of the implied license, and the fact that Schwindt owns 50 percent of all rights, title and interest in and to the copyrights in the Logo – and none of the Defendants do – the Band continues to use the Logo extensively, without Schwindt's permission.   For example, the Band sells merchandise – including its newest album, "Life Is Good" – that bears the Logo, and the Band prominently features the Logo on its social media pages and website.

57.     The Band also continues to benefit commercially from the use of Schwindt's name, likeness, and/or identity on its merchandise, websites, and/or social media pages.  For example, after the Other Members fired Schwindt as the Band's drummer, they decided to use footage from the Band's live 2015 St. Patrick's Day show – which depicts Schwindt as the Band's drummer – in order to promote the Band's 2016 St. Patrick's Day show.

### *The New Flogging Molly Entities*

58.     After they fired Schwindt as the Band's drummer in early October 2015, the Other Members formed the New FM Entities:  Quiet Man, Beggars Bush, and SD Cruise.

59.     Upon information and belief, the Other Members are each the directors, officers, and/or shareholders of the New FM Entities.

60.     The Other Members concealed from Schwindt both the creation and business purpose of the New FM Entities.

61.     Upon information and belief, all revenue generated by the New FM Entities is derived from and/or part of the Flogging Molly enterprise and the Other Members created the New FM Entities to divert income and corporate opportunities away from the Original FM Entities so as to deprive Schwindt of his legal rights and

13

**COMPLAINT**

DINSMORE & SHOHL LLP
SAN DIEGO

income.  For example, Schwindt's 2016 K-1 for FMI, the Band's primary business entity, reflects a loss because the Other Members are diverting funds from FMI to the New FM Entities.

62.   As a founding member of the Band and a 1/7 owner of its enterprise, Schwindt is entitled to his share of any income and distributions from the New FM Entities.   Schwindt has not received any such income or distributions.   Upon information and belief, the Other Members are receiving income and distributions from the New FM Entities.

63.   There have been payments between the Original FM Entities and the New FM Entities.  Upon information and belief, the purpose of some of those payments is so that the Other Members can unjustly enrich themselves, at the expense of Schwindt.

64.   The Other Members have denied Schwindt any access to the books and records of the New FM Entities, and are only providing limited access to the books and records of the Original FM Entities.

65.   The Other Members have also failed to keep Schwindt informed of all Band-related business meetings or include him in Band-related business communications.  During these "secret" Band-related business meetings, certain of the Other Members are conducting significant business without Schwindt including, without limitation, signing new record label and publishing deals and making touring plans.  Upon information and belief, there are shareholders besides Schwindt who are also not being informed of these meetings.

### *Schmidt Defames Schwindt*

66.   After Schwindt was fired as the Band's drummer, Defendant Schmidt made statements to the public that were untrue, and damaged Schwindt's professional reputation.

67.   For example, on March 28, 2016, in an "Ask Me Anything" thread on

14

**COMPLAINT**

the discussion website www.reddit.com – which in 2017 is approximately the fourth most popular website in the United States and ninth most popular website in the world – Schmidt responded to a question about Schwindt's departure from the Band by writing publicly: "George just needed to come off the road, it was getting to [sic] grueling for him."

68.    At the time he made these statements about Schwindt, Schmidt knew they were false.  In reality, before he was fired as the Band's drummer, Schwindt suggested that the Band *increase* its touring efforts – not just to increase the Band's income – but also because touring energized and inspired Schwindt.

69.    Schmidt's statements were harmful to Schwindt's professional reputation because he stated that Schwindt was unable and/or unwilling to handle the rigors of touring as a musician.  As music is Schwindt's primary profession, the defamatory statements are damaging to Schwindt's ability to earn a living.

## COUNT I
## COPYRIGHT INFRINGEMENT
### (17 U.S.C. § 101 *et seq.*)
### (Against All Defendants)

70.    Schwindt hereby incorporates the allegations above as though fully set forth herein.

71.    The Logo is an original work of authorship, embodying copyrightable subject matter, subject to the full protection of the United States copyright law. Schwindt owns 50 percent of all rights, title and interest in and to the copyrights in the Logo.  None of the Defendants own any interest in the copyrights to the Logo, and the implied license that they had to use the Logo has been terminated and rescinded.

72.    Defendants have infringed and violated, and continue to infringe and violate, Schwindt's exclusive rights in the Logo in violation of the Copyright Act, 17 U.S.C. § 501 *et seq.*, by reproducing the Logo and by distributing and publicly displaying it.

15

**COMPLAINT**

73.     Defendants' infringement of Schwindt's rights in the Logo has been willful and deliberate and Defendants have profited from their infringement at the expense of Schwindt.

74.     As a direct and proximate cause of Defendants' infringement of Schwindt's rights in the Logo, Schwindt is entitled to maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of $150,000, or such other amount as may be found appropriate after trial.  Alternatively, at Schwindt's option, Schwindt is entitled to recover his actual damages, pursuant to 17 U.S.C. § 504(b), in an amount to be determined at trial, plus disgorgement of Defendants' profits, resulting from Defendants' unauthorized use of the Logo.

75.     Schwindt is entitled to recover his costs of this litigation, including without limitation his attorneys' fees, pursuant to 17 U.S.C. § 505.

76.     Defendants' ongoing infringing conduct has caused, and will continue to cause, irreparable injury to Schwindt, unless enjoined by this Court.  Schwindt has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Schwindt is entitled to a permanent injunction prohibiting further infringement by the Defendants of Schwindt's exclusive rights in the Logo, including enjoining any further sales or other exploitation of merchandise that bears the Logo, such as the Band's new studio album, "Life Is Good."

## COUNT II
## BREACH OF FIDUCIARY DUTY TO MINORITY SHAREHOLDER
### (Against the Other Members)

77.     Schwindt hereby incorporates the allegations above as though fully set forth herein.

78.     The Other Members are majority shareholders of the Flogging Molly Entities and, as such, owe fiduciary duties to Schwindt, who is a minority shareholder.

79.     To the extent that the Other Members are directors or officers of the

16

**COMPLAINT**

DINSMORE & SHOHL LLP
SAN DIEGO

Flogging Molly Entities, they are also in a fiduciary relationship with Schwindt in his capacity as a shareholder of those entities.

80.     By engaging in the conduct detailed above, the Other Members have breached their fiduciary duties to Schwindt, including without limitation by: failing to provide Schwindt with the income and distributions from the Flogging Molly Entities to which he is legally entitled; attempting to exclude Schwindt from ownership in the New FM Entities; and prohibiting Schwindt from accessing all of the books and records of the Flogging Molly Entities.

81.     The Other Members' breaches of their fiduciary duties were for the purpose of enriching themselves at Schwindt's expense.

82.     As a direct and proximate cause of the Other Members' breaches of their fiduciary duties, Schwindt has been directly damaged in an amount to be determined at trial.

83.     The Other Members' conduct was willful, malicious, oppressive, and/or fraudulent.  As a result, Schwindt seeks an award of punitive damages.

**COUNT III**
**FOR AN ACCOUNTING**
**(Against All Defendants)**

84.     Schwindt hereby incorporates the allegations above as though fully set forth herein.

85.     As previously alleged herein, the Other Defendants are majority shareholders of the Flogging Molly Entities who owe fiduciary duties to Schwindt, who is a minority shareholder.

86.     Because the amount of harm to Schwindt caused by the Other Members cannot be easily ascertained and can only be determined by an accounting, by this action, Schwindt seeks an accounting of the books and records of all of the Flogging Molly Entities, including, without limitation, an accounting that reflects the sales of merchandise and the Band's newest album.

17

**COMPLAINT**

87.     Because   the   Other   Members'   conduct   necessitates   this accounting, Schwindt asks that the Other Members be obligated to pay for the cost of the accounting.

## COUNT IV
### FRAUD
**(Against the Other Members)**

88.     Schwindt hereby incorporates the allegations above as though fully set forth herein.

89.     As previously alleged herein, the Other Defendants owe fiduciary duties to Schwindt.

90.     The Other Defendants intentionally failed to disclose to Schwindt that they were forming the New FM Entities, or the business purpose of the New FM Entities within the Band's enterprise.

91.     Due to the Other Members' conduct, Schwindt had no way of knowing about the formation of the New FM Entities, let alone their business purpose.

92.     The Other Defendants intended to deceive Schwindt by forming the New FM Entities, and concealing facts about the existence and purpose of the New FM Entities.

93.     Had the concealed information about the New FM Entities been disclosed to him, Schwindt would have behaved differently.   For example, Schwindt would have immediately taken action to prevent the Other Members from enriching themselves through the New FM Entities, at Schwindt's expense.

94.     Schwindt has been harmed, and the Other Member's concealment of the New FM Entities was a substantial factor in causing Schwindt's harm.

95.     The Other Members' conduct was willful, malicious, oppressive, and/or fraudulent.  As a result, Schwindt seeks an award of punitive damages.

**COMPLAINT**

DINSMORE &
SHOHL LLP
SAN DIEGO

**COUNT V**
**DEFAMATION**
**(Against Defendant Schmidt)**

96.     Schwindt hereby incorporates the allegations above as though fully set forth herein.

97.     Schmidt has intentionally, wrongfully, without justification, and without privilege made statements to the public about Schwindt's departure from the Band and Schwindt's ability to tour as a musician, including without limitation Schmidt's March 28, 2016 statements about Schwindt on the immensely popular website www.reddit.com.

98.     The public clearly understood that Schmidt's statements were about Schwindt.  The public also reasonably understood Schmidt's statements to mean that Schwindt voluntarily left the Band because he could no longer handle the rigors of touring as a musician.

99.     Schmidt knew that his statements about Schwindt were not true.  As alleged herein, Schwindt neither left the Band voluntarily, nor was touring too rigorous for him.

100.    Schmidt's statements about Schwindt proximately caused damage to Schwindt – a professional musician – because they caused the public, including people in the music industry, to believe that Schwindt is no longer willing or able to tour.  As a direct and proximate result of these statements, Schwindt has suffered pecuniary loss, shame, and harm to his reputation and occupation.

101.    The aforementioned statements were motivated by malice and oppression in that Schmidt, without any factual basis, published statements that he knew were false on a popular public website.  Therefore, Schwindt is entitled to punitive damages in an amount sufficient to punish and deter similar conduct in the future.

**COMPLAINT**

DINSMORE &
SHOHL LLP
SAN DIEGO

**COUNT VI**
**COMMON LAW MISAPPROPRIATION**
**(Against all Defendants)**

102.   Schwindt hereby incorporates the allegations above as though fully set forth herein.

103.   Defendants used and are using Schwindt's name, likeness, and/or identity without Schwindt's permission.

104.   Defendants have gained an advantage, including a commercial benefit, by using Schwindt's name, likeness, and/or identity.

105.   Defendants' use of Schwindt's name, likeness, and/or identity is the substantial cause of harm to Schwindt, and has caused him distress, entitling Schwindt to damages in an amount to be determined at trial.

106.   Defendants' ongoing misappropriation has also caused, and will continue to cause, irreparable injury to Schwindt, unless enjoined by this Court. Schwindt is entitled to a permanent injunction prohibiting Defendants' further misappropriation of Schwindt's name, likeness, or identity without his permission.

**COUNT VII**
**VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ.***
**(Against all Defendants)**

107.   Schwindt hereby incorporates the allegations above as though fully set forth herein.

108.   The acts of Defendants as alleged above constitute a pattern and/or course of conduct that is unlawful, unfair, and/or fraudulent and therefore constitutes an unfair business practice in violation of Business and Professions Code section 17200, et seq.  The acts also constitute unfair competition under California common law.

109.   Under the terms of Section 17200, any business practice that violates a civil, criminal, state, federal, municipal, or common law is actionable as unfair competition.  And, any business practice that offends an established public policy or

20

**COMPLAINT**

1   is immoral, unethical, oppressive, unscrupulous, or is substantially injurious to

2   consumers, is actionable as unfair competition.

3       110.   Defendants have engaged in acts and/or practices of unfair competition

4   and/or unlawful, unjust, or unfair business practices, including, among others:

5   forming new entities within the Band's enterprise in order to divert income away

6   from Schwindt and to the Other Members; violating provisions of the California

7   Corporations Code; and intentionally and fraudulently concealing information about

8   the New FM Entities.

9       111.   As a result of the aforementioned acts, Schwindt has lost money and

10  suffered injury in fact, while Defendants have been unjustly enriched, and continue

11  to hold money belonging to Schwindt.

12      112.   Schwindt also seeks restitution, including disgorgement of Defendants'

13  unjustly obtained profits, under Business and Professions Code section 17203.

## **PRAYER FOR RELIEF**

15      WHEREFORE, in consideration of the foregoing, Schwindt respectfully

16  requests from this Court:

17      (1)   A declaration that Defendants have infringed Schwindt's exclusive

18  rights in the Logo under the Copyright Act;

19      (2)   A declaration that Defendants' infringement has been willful;

20      (3)   An award of such actual damages cause by, and disgorgement of

21  Defendants' profits in connection with, Defendants' copyright infringement under

22  17 U.S.C. § 504(b) in amounts to be determined at trial or, at Schwindt's election, an

23  award of statutory damages under 17 U.S.C. § 504(c)(2) in an amount to be

24  determined at trial, up to a maximum of $150,000, based on Defendants' willful

25  infringement of the Logo, or an amount to be determined at trial up to a maximum of

26  $30,000, should Defendants' infringement be determined to be non-willful, pursuant

27  to 17 U.S.C. § 504(c)(1);

28

**COMPLAINT**

DINSMORE &
SHOHL LLP
SAN DIEGO

(4)     An award of Schwindt's costs and expenses incurred in this action to enforce his copyrights in the Logo, including his reasonable attorneys' fees, as provided in 17 U.S.C. § 505;

(5)     A permanent injunction enjoining Defendants, their employees, agents, directors, officers, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendants, from:

       a.     Directly, indirectly, or contributorily infringing Schwindt's copyrights or continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop or manufacture any works derived or copies from Schwindt's Logo—including, without limitation, the Band's merchandise, albums, websites, or social media pages which bear the Logo—or to participate in any such activity;

       b.     Continuing to reproduce, distribute, sell, or otherwise exploit records embodying the musical compositions "The Guns of Jericho" and/or "The Hand of John L. Sullivan," whether as separate, unbundled recordings or as embodied on the Band's new studio album, "Life Is Good," or any other album or collection of recordings featuring either of these songs, absent a first use mechanical license from Schwindt; and

       c.     Continuing to market, offer, sell, dispose of, license, lease, transfer, publicly display, advertise, reproduce, develop or manufacture Schwindt's name, likeness, or identity, without Schwindt's permission.

(6)     Entry of judgment against the Defendants, and each of them, for compensatory damages in an amount to be proven at trial;

(7)     Entry of judgment against the Other Members, and each of them, for punitive damages in an amount to be proven at trial;

(8)     An award of interest, including pre-judgment interest, on all damages awarded;

22

**COMPLAINT**

(9)     An Order entitling Schwindt to an accounting of the books and records of the Flogging Molly Entities, to be paid for by the Other Members; and

(10)    Such other and further relief as the Court may deem just.

## JURY DEMAND

Schwindt hereby demands a trial by jury as to all issues so triable, pursuant to Fed. R. Civ. P. 38.

Dated:  September 21, 2017              Respectfully submitted,

*/s/ Joseph S. Leventhal*
Joseph S. Leventhal (SBN 221043)
joseph.leventhal@dinsmore.com
Andrew K. Puls (SBN 273672)
andrew.puls@dinsmore.com
DINSMORE & SHOHL LLP
655 W. Broadway, Suite 800
San Diego, California  92101
Telephone:  (619) 400-0500
Facsimile:  (619) 400-0501

*Attorneys for Plaintiff*
*GEORGE E. SCHWINDT*

11646938

23

**COMPLAINT**